Filed 5/20/22  Jessica S. v. Superior Court CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| JESSICA S.,<br><br>Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF LOS ANGELES COUNTY,<br><br>Respondent;<br><br>LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Real Party in Interest. | B316593<br><br>(Los Angeles County Super. Ct. No. 19CCJP04453D) |

ORIGINAL PROCEEDINGS in mandate. Tara L. Newman, Judge. Petition denied.

Los Angeles Dependency Lawyers; Law Office of Jolene Metzger, Dominika Campbell and Leah Moritz for Petitioner.

No appearance for Respondent.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and Sarah Vesecky, Deputy County Counsel, for Real Party in Interest.

\* \* \* \* \* \*

In this petition for extraordinary relief, a mother seeks review of a juvenile court's order in a dependency case involving her infant son that terminated reunification services and set the case for a permanency planning hearing. Mother argues the juvenile court's finding that the Los Angeles Department of Children and Family Services (the Department) provided her reasonable reunification services was not supported by substantial evidence. We disagree, deny mother's petition, and dissolve the stay of the permanency planning hearing.

### FACTS AND PROCEDURAL BACKGROUND

**I.      Family**

Jessica S. (mother) has four children with three different men—Aubry R. (born July 2013), Sebastian A. (born April 2017), Camilla S. (born November 2018), and Axel S. (born March 2020).

Guadalupe T. (father) is the biological father of the youngest two children, Camilla and Axel.

Mother and father have a tumultuous relationship. In March 2018 and July 2019, father engaged in domestic violence against mother. In September 2019, a criminal court issued a criminal restraining order enjoining father from contacting mother.

Mother and father also have a history of substance abuse; more specifically, mother had a history of using opioids and methamphetamine.

## II.    Prior Dependency Case

In September 2019, the juvenile court exerted dependency jurisdiction over the three oldest children (Axel had yet to be born) on the basis of (1) mother and father's history of domestic violence, and (2) mother's and father's substance abuse issues.

The juvenile court ordered the Department to provide mother with reunification services, including parenting classes, individual counseling, drug testing, and domestic violence counseling for victims.

Mother and father continued to accuse one another of harassment and of stalking one another.

## III.    Current Dependency Case

Axel was born in March 2020. Shortly after his birth, the Department received reports that mother was drinking to excess.

### A.    *The dependency petition*

In April 2020, the Department filed a petition asking the juvenile court to exert dependency jurisdiction over Axel based on (1) mother and father's history of domestic violence, which placed Axel at substantial risk of serious physical harm (thereby rendering dependency jurisdiction appropriate under Welfare and

3

Institutions Code section 300, subdivisions (a) and (b)(1)),[1] (2) mother's and father's histories of substance abuse, which also placed Axel at substantial risk of serious physical harm (thereby rendering dependency jurisdiction appropriate under subdivision (b)(1) of section 300), and (3) the juvenile court's prior finding that Axel's sibling and half siblings are "dependents," which also placed Axel at substantial risk of serious physical harm (thereby rendering dependency jurisdiction appropriate under subdivision (j) of section 300).

**B.    *Jurisdictional and dispositional hearings***

In October 2020, the juvenile court held a combined jurisdictional and dispositional hearing.

The court sustained the domestic violence count (but only under subdivision (b)(1) of section 300), the substance abuse count and the dependency sibling count; the court dismissed the domestic violence count under subdivision (a) of section 300.

The court also removed Axel from his parents.

The court ordered the Department to provide mother with reunification services in accordance with her case plan. Specifically, mother's case plan required the Department to provide mother with (1) a "[f]ull drug/alcohol program with aftercare," including weekly random drug testing, (2) a domestic violence support group for victims, (3) and a "[d]evelopmentally appropriate" parenting program. The court also carried forward the written visitation schedule the Department had previously prepared at the court's direction for mother to visit Axel three days a week for three hours per visit.

---

[1]    All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

4

By this time, mother had already enrolled in a domestic violence and substance abuse programs as part of her case plan for the prior dependency case, been dropped from those programs, and re-enrolled in the substance abuse program.

**C.     *Mother's progress in the first six months of reunification***

Mother re-enrolled in the substance abuse program in October 2020, and attended many individual and group sessions as part of that program as well as submitted several negative drug tests.

Although the Department's contemporaneously prepared activity logs did not reflect any instances in which the Department had successfully contacted mother during this six-month period, other evidence in the record indicates that the Department made two successful attempts (in December 2020 and January 2021) and three unsuccessful attempts (two in February 2021 and one in March 2021) to contact mother during this period.

**D.     *Six-month review hearing***

The juvenile court held a six-month review hearing on April 23, 2021.  The court found that mother had not made "substantial" progress on her case plan.  The court also found that the Department had not provided mother with reasonable family reunification services.  The court ordered the Department to (1) provide "all appropriate referrals [to mother] and set up [mother] for testing"; (2) "assess mother's testing through program"; (3) "provide transportation assistance/referrals to mother for visitation"; (4) "provide detailed information as to the Department's efforts . . . and the progress and participation of parents"; (5) provide the court with service logs for the next

5

review period; and (6) verify the information mother had provided at the six-month hearing regarding her progress at the substance abuse program.

### E. *Mother's progress in the next six months of reunification*

Over the next six months, the Department made repeated efforts to provide mother with appropriate referrals for programs, drug testing and visitation-related transportation: Immediately after the six-month review hearing, the Department sent mother an email with a packet of program, testing and transportation referrals, and the Department left a second copy of those referrals with the relatives who had custody of Axel for mother to pick up during her visits. The Department also set up in-person meetings with mother for May and June 2021; when the Department was setting up those meetings, mother told the Department social worker that "she did not want or need referrals." Ultimately, mother never bothered to show up or to cancel. The Department tried to schedule further in-person meetings, but was unable to reach mother because the cell phone number mother gave the Department in April 2021 stopped working and mother did not respond to any of the Department's emails. The Department again left copies of the referrals with Axel's caregiver, but mother refused them. In August 2021, the Department tried to find current contact information for mother on Facebook, but was unsuccessful.

It was not until the month before the 12-month review hearing that *mother* reached out to the Department with new contact information, but even then ignored all further voicemail and emails from the Department.

Mother missed 18 drug tests between May 7 and September 3, 2021.

**F.** *Twelve-month review hearing*

The juvenile court held a 12-month review hearing on November 23, 2021. Mother argued that she was entitled to another six months of reunification services because the Department had failed to provide her with reasonable reunification services. The Department disagreed, responding that mother had not made herself available by changing her contact information without informing the Department. After taking the issue under submission, the juvenile court found that the Department had provided reasonable reunification services. Specifically, the court found that the Department had made "good faith effort[s] to address the parents' problems through reasonable services and to attempt to maintain contact with the parents so as to assist them in enrolling in [the] ordered programs." The court acknowledged that the Department's "contact with the parents was not as consistent as it could have been," but that this lack of contact was due to the parents' failure to "provide updated contact information" and their failure to "respond to [the Department's] efforts." Because the court found that mother had not provided documentation showing her progress with her case plan and that mother had missed so many drug tests, the court found mother's progress to be lacking, terminated reunification services, and set the matter for a permanency planning hearing.

**G.** *Appellate review*

Mother filed a notice of appeal from the juvenile court's order terminating reunification services, which we construed as a

notice of intent to file a writ petition. We issued an order to show cause. (See Cal. Rules of Court, rule 8.452(d).)

## DISCUSSION

Mother argues that the juvenile court's finding that the Department offered her reasonable reunification services is unsupported.

## I.    Pertinent Law

Where, as here, a child is removed from his parents during a juvenile dependency proceeding, the juvenile court in most cases is required to "order the social worker"—here, the Department—to provide reunification services to the child and his parents. (§ 361.5, subd. (a); see also § 362, subd. (d).) To effectuate this mandate, the court will set forth the services that must be provided to any involved parent in a "case plan." The court is thereafter required to show periodic status review hearings—typically, at six and 12 months after the child's removal from his parents—and, at those hearings, assess "[t]he extent of the" Department's "compliance with the case plan." (§ 366, subd. (a)(1)(B), § 366.21, subds. (e)(8) [six-month hearing], (f)(1) [12-month hearing].) A court may not keep a removal order in effect and may not terminate the reunification services unless it finds, in most instances by clear and convincing evidence, that the Department has provided the "reasonable services" previously ordered by the court. (*Ibid.*; *Katie V. v. Superior Court* (2005) 130 Cal.App.4th 586, 594; *Robin V. v. Superior Court* (1995) 33 Cal.App.4th 1158, 1164 (*Robin V.*).) An agency provides "reasonable services" when it "offer[s] services designed to remedy" the problems identified in the parent's case plan, "maintain[s] reasonable contact with the parents during the course of the . . . plan," and makes "reasonable efforts to assist

8

the parents in areas where compliance proved difficult." (*In re Riva M.* (1991) 235 Cal.App.3d 403, 414, italics omitted; *In re Dino E.* (1992) 6 Cal.App.4th 1768, 1777.) "Reasonable efforts" are "good faith" efforts that are "reasonable under the circumstances." (*Robin V.*, at p. 1164; *In re Kristin W.* (1990) 222 Cal.App.3d 234, 254; *T.J. v. Superior Court* (2018) 21 Cal.App.5th 1229, 1240.) To be reasonable, the efforts need not be ideal or perfect, and the Department need not "force a parent to participate in [the offered] services." (*In re Nolan W.* (2009) 45 Cal.4th 1217, 1233.)

We review a juvenile court's finding, by clear and convincing evidence, that the Department has provided reasonable reunification services, including the subsidiary finding that the Department has made good faith efforts to provide those services, for substantial evidence. (*T.J.*, *supra*, 21 Cal.App.5th at p. 1238; *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1011 (*O.B.*).) In applying this standard of review, we review the record in the light most favorable to the juvenile court's finding. (*O.B.*, at p. 1011-1012.)

## II.    Analysis

The juvenile court's finding that the Department provided reasonable reunification services is supported by substantial evidence.

Substantial evidence supports (and mother does not contest) the juvenile court's finding that the services the Department offered mother—the substance abuse program, the domestic violence support group, and the parenting program— were all "designed to remedy" the domestic violence and drug abuse-related issues that necessitated dependency jurisdiction over Axel. The Department also sought to ensure visitation

9

between mother and Axel, which is a component of *every* reunification plan. (See generally § 361.5.)

Substantial evidence supports the juvenile court's finding that the Department made good faith efforts to maintain contact with mother. Although the Department was not able to meet with mother in person or to correspond with her on the phone or over email, it was not for lack of trying: The Department set up two in-person meetings which mother did not attend; the Department repeatedly emailed mother, but she never responded; and the Department tried to call mother, but mother changed her cell phone number and provided no further information until a month before the 12-month review period ended and, even then, ignored the Department's calls. The Department even tried to track mother down on Facebook. Mother says the Department should have made further efforts to track her down, but we disagree; the logical end point of mother's argument is the Department should have to inject tracking devices into parents to ensure they can be found. This is not— nor should it ever be—the law.

Substantial evidence also supports the juvenile court's finding that the Department made good faith efforts to assist mother in enrolling and participating in the various programs. The Department emailed mother the necessary referral forms right after the six-month review hearing, and thereafter left the same forms with Axel's caregiver on two other occasions; given mother's refusal to provide the Department with her current contact information, these were good faith and reasonable efforts to get mother the information she needed. The fact that they did not succeed was a function of mother's stated view that she did not "want or need the referrals." To quote another case,

10

"[mother's] real problem was not a lack of services available but a lack of initiative to consistently take advantage of the services that were offered." (*Angela S. v. Superior Court* (1995) 36 Cal.App.4th 758, 763.)

Mother resists this conclusion with two arguments.

First, mother argues that the Department did not provide reasonable reunification services because it did not obey the juvenile court's order, made at the six-month review hearing, to verify mother's enrollment in the substance abuse program; nor, mother continues, did the Department obtain an updated progress report from that program. To be sure, the Department did not do as the juvenile court instructed. But this does not mean the Department did not provide reasonable reunification services because the Department's failure to *document* the services it offered mother does not mean the Department failed to *provide* those services to mother. Further, nothing stopped *mother* from obtaining a progress report for the 12-month review hearing, as she had done so for the six-month review hearing. Tellingly, mother neither offered any evidence nor made any proffer at the 12-month review hearing to suggest that she had been attending that program or making progress in it.

Second, mother argues that the Department did not provide reasonable services because it did not create a written visitation schedule. To begin with, the juvenile court did not at the six-month review hearing order the Department to create a written visitation schedule. But even if it had, the Department had already created one. Contrary to what the Department's counsel represented at the 12-month review hearing, the Department *had* created a written visitation schedule prior to the jurisdictional and dispositional hearing, which was carried

11

forward once Axel was removed from mother. More fundamentally, the Department's failure to create a *written* visitation schedule does not mean that the Department did not provide a visitation schedule; it did, and mother simply refused to adhere to it by visiting Axel in accordance with that schedule. Relatedly, mother argues that the Department did not provide transportation referrals to assist with visitation. As noted above, the Department made repeated attempts to provide mother with referrals; it failed only because mother thwarted those attempts.

## DISPOSITION

The petition is denied.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


_____, J.

HOFFSTADT

We concur:


_____, P. J.

LUI


_____, J.

CHAVEZ

12